PEOPLE *v.* WILLIAMS

1. JURY—SELECTION—SOURCE LIST—CONSTITUTIONAL LAW.

A source of lists for jury selection is constitutionally proper if the source reasonably reflects a cross-section of the population suitable in character and intelligence for jury duty.

2. JURY—SELECTION—SOURCE LIST—PROPERTY TAX ROLLS—CONSTITUTIONAL LAW.

Property tax rolls provide a comprehensive list of prospective jurors, because even though they exclude some poor people, not all of the included property owners are wealthy.

3. JURY—SELECTION—SOURCE LIST—PROPERTY TAX ROLLS—REASONABLE REPRESENTATION—CONSTITUTIONAL LAW.

Property tax rolls are a constitutionally proper source of jury lists even though they exclude some poor people, because they do not exclude the poor to such a degree that the resulting juries are not reasonably representative of the community.

4. JURY—SELECTION—SOURCE LIST—PROPERTY TAX ROLLS—NONPROPERTY OWNERS—EXCLUSION—CONSTITUTIONAL LAW. ·

Nonproperty owners do not constitute such a necessary section of the community sample that would compel a court to hold that the use of property tax rolls as the source for jury lists is unconstitutional.

5. JURY—SELECTION—POLITICAL SUBDIVISIONS—RACIAL DISCRIMINATION.

A method of jury selection based on political subdivisions does not *per se* discriminate against a particular racial group.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 5]  47 Am Jur 2d, Jury §§ 136–188.
[2–4]  47 Am Jur 2d, Jury §§ 141, 147, 148.
[6]  47 Am Jur 2d, Jury §§ 283, 284.
[7]  21 Am Jur 2d, Criminal Law §§ 333–344.
[8, 9]  53 Am Jur, Trial § 536.
[10]  8 Am Jur 2d, Bail and Recognizance § 77.

6. JURY—SELECTION—RACIAL DISCRIMINATION—EVIDENCE—CONSTITU-
TIONAL LAW.

> Defendant's failing to present evidence of the actual racial make-
> up of jury panels previous to the defendant's panel was insuffi-
> cient to meet the burden of proof required to show the sys-
> tematic exclusion of blacks from jury duty.

7. CRIMINAL LAW—IN-COURT IDENTIFICATION—PRE-TRIAL CONFRONTA-
TION—CONSTITUTIONAL LAW.

> In-court identification of the defendant was not tainted by a
> pre-trial confrontation at a hospital where the witness tes-
> tified that his in-court identification of the defendant was
> based on what he had observed at the scene of the crime
> and later at the scene of the arrest and not on his hospital
> observation of defendant.

8. TRIAL—INSTRUCTIONS TO JURY—COURT RULE.

> A trial judge may instruct the jury on any point of law at any
> stage of the trial (GCR 1963, 516.3).

9. TRIAL—INSTRUCTIONS TO JURY.

> Instructing the jury, during the cross-examination of a prosecu-
> tion witness, that a witness does not have to account for the
> testimony of another witness was not error (GCR 1963, 516.3).

10. CRIMINAL LAW—INCREASING BAIL—DISCRETION.

> Raising the defendant's bail from $1,000 to $1,500 was not
> an abuse of discretion where the defendant had requested
> an adjournment so that he could retain private counsel with
> $1,200 he had recently received, the trial judge was not
> satisfied that defendant's request was in good faith because
> the judge considered the court-appointed counsel an excellent
> attorney, the bail was raised to discourage the defendant
> from using the money on bail and not on counsel, and there
> was evidence that the defendant was seen committing the
> crime with which he was charged.

Appeal from Berrien, Karl F. Zick, J. Submitted
Division 3 October 6, 1970, at Grand Rapids.
(Docket No. 7119.) Decided January 18, 1971.

LeRoy Roger Williams was convicted of armed
robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Ronald J. Taylor,* Prosecuting Attorney, and *Hugh W. Black* and *John A. Smietanka,* Assistant Prosecuting Attorneys, for the people.

*Robert W. Cary,* for defendant on appeal.

Before: HOLBROOK, P. J., and R. B. BURNS and J. J. KELLEY, JR.,* JJ.

R. B. BURNS, J. Defendant was convicted by a jury of the crime of armed robbery.[1] The source lists for juror selection existing at the time of defendant's trial were prescribed by MCLA § 600.1202 (Stat Ann 1962 Rev § 27A.1202).[2] This statute directed certain officials to select prospective jurors from either the tax assessment rolls or voters' registration lists of the various townships and wards. Defendant argues that the normal practice in the majority of Michigan counties, including the county from which defendant's jury was selected, was to choose the jury array solely from the tax rolls. Defendant contends this selection process denies him his constitutional rights of due process, equal protection, and trial by an impartial jury because of its arbitrary and systematic exclusion of non-property owners from jury service.

Defendant is undeniably correct that if tax lists constitute the sole jury source list, non-property owners are systematically excluded from jury service. However, the unsupported statement that tax rolls are in practice the only source list used and the mere fact that every juror on defendant's panel

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA § 750.529 (Stat Ann 1954 Rev § 28.797).

[2] Repealed in 1968 and replaced by MCLA § 600.1304 (Stat Ann 1970 Cum Supp § 27A.1304).

happened to be a property owner,[3] hardly measure up to the burden of "positive proof" established by Michigan and Federal courts in such cases. *Whitus v. Georgia* (1967), 385 US 545 (87 S Ct 643, 17 L Ed 599); *United States v. Williams* (CA 8, 1970), 421 F2d 529; *People v. Trice* (1970), 22 Mich App 521. Nevertheless, tax rolls were suggested as source lists for jury selection, so this Court will determine the constitutionality of using such lists.

The United States Supreme Court in *Brown v. Allen* (1953), 344 US 443, 474 (73 S Ct 397, 416; 97 L Ed 469, 498) provided the standard to which we must look, when it stated:

"Our duty to protect the Federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, *so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty.*" (Emphasis supplied.)

In *Brown* the use of tax rolls was considered constitutionally permissible. The *Brown* principle of constitutionally compelled community cross-sections has been expressly recognized by this Court. See, *e.g., Robson v. Grand Trunk W. R. Co.* (1966), 5 Mich App 90.

Tax rolls provide a comprehensive list of prospective jurors. Aside from voters' lists, and in the absence of compelled population registration, tax rolls play a necessary and needed role in jury

---

[3] Voter status and property ownership are not mutually exclusive conditions. Challenge to the array goes to the manner of making up the panel, without regard to the objections to the individual jurors who compose it. A particular jury does not have to be a representative group from the community. The requirement is that the original sources, taken together, must be representative. *Thiel v. Southern Pacific Company* (1946), 328 US 217 (66 S Ct 984, 90 L Ed 1181); *Robson v. Grand Trunk W. R. Co.* (1966), 5 Mich App 90.

selection. No doubt many poor people are excluded from such a list, but on the other hand all property owners are not necessarily wealthy. Voters' lists exclude nonvoters, seemingly a substantial group of people, many of whom are doubtless also poor. Telephone books exclude people who, for some reason, probably economic, do not have phones. Any lists presently available will exclude and include poor and rich people. But none of the lists, including tax rolls, exclude poor people to such a degree that the resultant juries are not reasonably representative of the community. Nonproperty owners do not constitute such a necessary section of the community sample that would compel this Court to hold otherwise. See *State* v. *Rogers* (1969), 275 NC 411 (168 SE2d 345), *cert den* (1970), 396 US 1024 (90 S Ct 599, 24 L Ed 2d 518).

Defendant's argument that black people are systematically excluded from jury duty is without merit. A method of jury selection based on political subdivisions does not *per se* discriminate against blacks. The defendant, without evidence of the actual racial makeup on jury panels previous to the defendant's, fails to meet the necessary burden of proof. *Whitus* v. *Georgia, supra; People* v. *Trice, supra.*

Defendant also submits that the in-court identification of the defendant by Elmer Rhodes was tainted by a pre-trial confrontation. Rhodes testified that his in-court identification of the defendant was based on what he had observed at the scene of the crime and later at the scene of the arrest. It was also his testimony that his in-court identification was independent of his observation of the defendant in a hospital subsequent to the arrest. From this testimony the trial court determined that the hospital observance had no prejudicial effect on the in-court

identification of the defendant. We agree. Rhodes' prior opportunity to observe the defendant committing the criminal act convinces this Court that the in-court identification was not tainted and thus not in violation of *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149).

Next, defendant argues that the trial judge erred when he instructed the jury, during cross-examination of a prosecution witness, that a witness does not have to account for the testimony of another. This instruction was merely an attempt to simplify a point of law. No intrusion was made upon the province of the jury. GCR 1963, 516.3, empowers a trial judge to instruct the jury as to any point of law at any stage of the trial.

Defendant's contention that the trial court's characterization of the testimony of a prosecution witness was prejudicial need not be considered since no objection to this characterization was made at trial level. *People* v. *Gay* (1969), 15 Mich App 484.

Finally, defendant submits that the trial court abused its discretion when it increased defendant's bond from $1000 to $1500. The trial court's decision to raise the bond was made in conjunction with its order to adjourn the trial at defendant's request. The defendant requested adjournment for the purpose of obtaining private counsel with the $1200 defendant had recently received. The trial judge indicated that he was not satisfied that defendant's request was in good faith since he considered defendant's appointed counsel an excellent attorney. To insure that the $1200 was used to retain private counsel the trial judge raised the bond to discourage any attempt by the defendant to spend the money for bail. This factor, plus evidence that the defendant was seen committing the alleged crime, per-

suades this Court that abuse of discretion has not been shown by the defendant.

Defendant lists two issues in his brief which are devoid of any analysis whatsoever. Questions for appeal which are not briefed are considered abandoned by this Court. *People* v. *Rogers* (1968), 10 Mich App 380.

Affirmed.

All concurred.